**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICHAEL HOBSON, ADAM RICH,
AISHA TACKETT, DALE TUSEK JR.,       Case No.
BRIAN WOLFORD,

      Plaintiffs,                     Hon.

v.

THE SPIRATEX COMPANY,

      Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiffs
340 Beakes Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## <u>COMPLAINT AND JURY DEMAND</u>

NOW COME Plaintiffs Michael Hobson, Adam Rich, Aisha Tackett, Dale

Tusek Jr., Brian Wolford ("Plaintiffs"), by and through their undersigned attorneys,

and state the following against Defendant The Spiratex Company ("Defendant"):

## INTRODUCTION

1.      There is no "pandemic exception" to the protections against religious

and disability discrimination and retaliation afforded by Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities

Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Elliott-Larsen Civil Rights

Act ("ELCRA"), and the Persons with Disabilities Civil Rights Act ("PWDCRA").

Defendant did not understand this when it suspended Plaintiffs on December 21,

2021 and terminated them on January 21, 2022 after failing to grant them religious

and medical accommodations to be exempt from Defendant's COVID-19 vaccine

mandate based on a purported "undue hardship."  There is no reason why a host of

accommodations would not have been effective, including masks, social distancing,

temperature screening, testing, and remote work.  And Defendant operated under the

false premise that unvaccinated employees posed a greater threat of spreading the

COVID-19 virus to coworkers than vaccinated employees.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Michael Hobson resides in Westland, Michigan.

3.      Plaintiff Adam Rich resides in Westland, Michigan.

4.      Plaintiff Aisha Tackett resides in Ypsilanti, Michigan.

5.      Plaintiff Dale Tusek Jr. resides in Canton, Michigan.

6.      Plaintiff Brian Wolford resides in Taylor, Michigan.

7.     Defendant The Spiratex Company ("Defendant") is a domestic for-profit corporation with a registered mailing address in Dexter, Michigan.

8.     The U.S. District Court for the Eastern District of Michigan has federal question jurisdiction over the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act, MCL 37.2102 *et seq.* ("ELCRA") and Persons with Disabilities Civil Rights Act of 1976, MCL 37.1101 *et seq.* ("PWDCRA") claims pursuant to 28 U.S.C. § 1367.

9.     Venue is proper because it is the judicial district in which a substantial part of the events occurred, pursuant to 28 U.S.C. § 1391(b)(1).

10.     Plaintiffs all filed discrimination charges with the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiffs Tackett and Rich received a Notice of Right to Sue from the EEOC within the past 90 days. The other Plaintiffs have not received "right to sue" letters from the EEOC at this time, but their Title VII claims are properly brought before this Court pursuant to Title VII's single filing (or "piggybacking") rule.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

11.     The deadline for employees to be vaccinated was December 8, 2021,

which required employees to receive their first dose by either October 27, 2021 (Moderna), November 3, 2021 (Pfizer), or November 24, 2021 (Johnson & Johnson).

12.     The deadline was later extended to December 17, 2021.

13.     The vaccine mandate was purportedly implemented to safeguard the health of "customers and visitors" and the "community at large."

14.     Defendant never required customers and visitors be vaccinated.

15.     Plaintiffs requested medical and religious accommodations to the vaccine mandate from approximately October 6, 2021 to November 1, 2021.

16.     Plaintiffs' accommodation requests were denied.

17.     The deadline to be vaccinated was extended to December 17, 2021.

18.     Human Resources Manager Jeanette Tedford warned employees they would be suspended without pay if they remained unvaccinated by the deadline.

19.     Defendant actively coerced employees to abandon their religious convictions and sacrifice their health after their accommodations were denied.

20.     Plaintiffs were suspended without pay on December 21, 2021.

21.     The U.S. Supreme Court later stayed the vaccine mandate promulgated by the Occupational Safety and Health Administration ("OSHA") on January 13, 2022. *Nat'l Fed'n of Indep. Businesses v. Dep't of Lab.*, 142 S. Ct. 661 (2022).

22.     Plaintiffs were formally terminated on January 21, 2022.

23.     Plaintiffs were offered a mere two (2) weeks of pay as severance.

24.     Plaintiffs all refused the token severance offers.

25.     Plaintiffs denied religious accommodations to the vaccine mandate

were forced into the position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their
> livelihood imposes an obvious and substantial burden on
> religion . . . vaccine mandates . . . presents a crisis of
> conscience for many people of faith. It forces them to
> choose between the two most profound obligations they
> will ever assume—holding true to their religious
> commitments and feeding and housing their children. To
> many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

**Plaintiffs' Religious Accommodation Requests**

26.     Plaintiffs Rich, Tackett, Tusek Jr., and Wolford supplied ample

information regarding their sincere religious beliefs, whether solicited or not.

27.     Plaintiff Tusek Jr. submitted a request for accommodation on October

6, 2021, illustrating his sincerely held religious belief in pertinent part:

> Quarantining gave me and my family much time to reflect
> on our beliefs and relationship with God. I am currently a
> practicing Catholic, and my beliefs are sincere and
> meaningful . . . The vaccine is produced from the fetal
> stem cells of aborted babies. The Catholic Church,
> upholding the Fifth Commandment, "Thou shall not kill,"
> opposes abortion . . . I am opposed to all immunizations
> using aborted baby cells in the development of the
> vaccine, for testing, or within the product itself.

28.     Defendant ordered him to contact his physician or pharmacist to discuss

whether aborted fetal cells were, in fact, used in the development of the vaccines.[1]

29.     Defendant thereby challenged the factual basis of his religious belief,

when it was permitted to challenge only the religious nature or sincerity of a belief:

> EEOC guidance explains that the definition of religion is broad and protects beliefs, practices, and observances with which the employer may be unfamiliar. Therefore, the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief, practice, or observance. However, if an employee requests a religious accommodation, and an employer is aware of facts that provide an objective basis for questioning *either the religious nature or the sincerity of a particular belief*, practice, or observance, the employer would be justified in requesting additional supporting information.

U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

### Plaintiffs' Medical Accommodation Requests

30.     Plaintiff Hobson has a history of blood clots in his lungs.

31.     Plaintiff Hobson had a bad reaction to a medication in the past.

32.     Plaintiff Hobson provided ample medical records in support of his

request for medical accommodation to the vaccine mandate.

33.     Defendant requested his medical provider complete a specific form.

34.     Plaintiff Hobson could not schedule a medical appointment for months.

---

[1] Fetal cell lines from aborted fetuses were used to produce and manufacture the Moderna, Pfizer, and Johnson & Johnson vaccines. MICH. DEP'T OF HEALTH & HUM. SERVS., *Covid-19 Vaccines & Fetal Cells* (Apr. 21, 2021).

35.     Defendant terminated him in the interim.

**Defendant's Responses to Accommodation Requests**

36.     Plaintiffs were given near-identical accommodation denial letters.

37.     The denial letters did not provide for an appeal process.

38.     Plaintiff Tusek Jr.'s request was denied October 28, 2021:

> You explained to us that you objected to receiving the vaccine because you believed it contained human fetal cells. We asked you to contact your physician or pharmacist to discuss if this was, in fact, true . . . You also acknowledged that you take other medication that has been tested and/or developed using human fetal cell lines. The Company did not reach a decision as to the sincerity of your religious belief . . . *It is the Company's position that, based on current information, allowing unvaccinated individuals to work in the same manufacturing environment as vaccinated individuals, even if wearing a mask, would be an undue hardship.*

39.     Plaintiff Tusek Jr. submitted a response on November 8, 2021: "I do not and have not believed that the vaccine itself contains fetal cells. I am opposed to the vaccine because it used murdered baby cells in the development of the vaccine."

40.     Ms. Tedford responded with a non sequitur later that week, on November 10, 2021: "I would suggest you speak with a health care provider."

41.     Defendant's President Garry Markle explained that employees would not be welcomed back to work unless and until they received the vaccine.

42.     Ms. Tedford issued a memorandum on November 17, 2021 extending the deadline for vaccination from December 8, 2021 to December 17, 2021.

43.     Ms. Tedford issued near-identical termination letters on February 28, 2022: "Spiratex is moving forward with the termination of your employment."

44.     Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).

45.     Defendant claims that it "did not reach a decision" as to sincerity.

46.     Defendant, however, placed inordinate weight on whether employees took other medications developed using human fetal cell lines, when religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981)

47.     There is no reason why a host of reasonable accommodations would not have been effective. Examples of reasonable accommodations for unvaccinated employees include wearing a mask, working at a social distance from others, working a modified shift, getting tested periodically, telework, and reassignment. U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

48.     Plaintiffs could have worn masks in the workplace.

49.     Plaintiffs could have social distanced in the workplace.

50.     Plaintiffs could have participated in temperature screening.

51.     Plaintiffs could have tested periodically.

52.     Plaintiffs could have engaged in frequent sanitizing and disinfecting.

53.     Plaintiffs could have worked remotely.

54.     Plaintiffs could have been reassigned.

55.     Defendant never explained why no accommodations were granted.

56.     Defendant did not explore reasonable alternatives to the vaccine.

**Defendant Cannot Establish Undue Hardship**

57.     "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

58.     The employer, not the employee, bears the burden of demonstrating "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978); see also *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004) ("The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.").

59.     An employer does not satisfy its burden of demonstrating undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe &*

*Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

60. Defendant cannot satisfy its burden of demonstrating undue hardship.

61. Defendant never engaged in the interactive process.

62. Plaintiffs' requests for accommodations were unfairly scrutinized.

63. Defendant allegations of undue hardship not only lack scientific backing but also directly contravene scientific evidence supporting the effectiveness of practices such as wearing masks, social distancing, and temperature screening in preventing infection and death. See Stella Talic et al., *Effectiveness of Public Health Measures in Reducing the Incidence of Covid-19, SARS-Cov-2 Transmission and Covid-19 Mortality: Systematic Review and Meta-Analysis*, BRIT. MED. J. (2021).

64. Plaintiffs were not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE").

65. Plaintiffs were more than willing to comply with safety protocols.

66. Plaintiffs had been engaging in safety protocols, which had been deemed effective throughout the pandemic for months before the mandate.

**COUNT I**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE**
**PLAINTIFFS RICH, TACKETT, TUSEK JR., AND WOLFORD**

67. Plaintiffs restate the foregoing paragraphs as set forth fully herein.

68. Defendant is an "employer" as a corporation engaged in an industry

affecting commerce with fifteen (15) or more employees. 42 U.S.C. § 2000e(b).

69.    Plaintiffs Rich, Tackett, Tusek Jr., and Wolford hold sincere religious beliefs that conflict with the vaccine mandate.

70.    Plaintiffs Rich, Tackett, Tusek Jr., and Wolford supplied ample information regarding their sincere religious beliefs.

71.    Plaintiffs' religious accommodation requests were denied.

72.    Plaintiffs were suspended without pay on December 21, 2021.

73.    Plaintiffs were formally terminated on January 21, 2022.

74.    Defendant failed to engage in the interactive process before suspending them on December 21, 2021 and terminating them on January 21, 2022.

75.    Multiple reasonable accommodations could have been offered to them without undue hardship.

76.    Plaintiffs could have worn masks in the workplace.

77.    Plaintiffs could have social distanced in the workplace.

78.    Plaintiffs could have participated in temperature screening.

79.    Plaintiffs could have tested periodically.

80.    Plaintiffs could have engaged in frequent sanitizing and disinfecting.

81.    Plaintiffs could have worked remotely.

82.    Plaintiffs could have been reassigned.

83.    Plaintiffs filed charges of discrimination with the U.S. Equal

Employment Opportunity Commission ("EEOC") on April 1, 2022.

84.    Plaintiffs have suffered mental and emotional distress, outrage, mental

and physical anguish, loss of reputation, humiliation, embarrassment, indignity, and

the physical effects associated therewith as a direct and proximate result.

85.    Plaintiffs have been placed in financial distress and they have suffered

a loss of earnings and benefits, loss of health insurance and a loss of and impairment

of their earning capacity and ability to work as a direct and proximate result.

86.    Plaintiffs have been required to employ the services of an attorney.

87.    Defendant's actions were intentional and reckless.

### COUNT II
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
### DISPARATE TREATMENT DISCRIMINATION
### PLAINTIFFS RICH, TACKETT, TUSEK JR., AND WOLFORD

88.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

89.    "To assert a successful claim of religious discrimination . . . a plaintiff

must either present direct evidence of discrimination, or, in the absence of direct

evidence, present a prima facie case of indirect discrimination by showing (1) they

were a member of a protected class, (2) they experienced an adverse employment

action (3) they were qualified for the position, and (4) they were replaced by a person

outside of the protected class or were treated differently than similarly situated

employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

90.    Plaintiffs espoused religious beliefs and are therefore members of a

protected class.

91.     Defendant directly discriminated against Plaintiffs by terminating them after they stated their sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

92.     Defendant allowed other unvaccinated employees without Plaintiffs' same religious beliefs to be exempted from Defendant's vaccine mandate policy.

93.     It is undisputed that Plaintiffs were qualified for their positions.

94.     Plaintiffs were treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

95.     Plaintiffs were terminated and replaced with employees of different religious beliefs.

96.     Plaintiffs suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of her requests, and will so suffer in the future.

**COUNT III**
**VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")**
**RELIGIOUS DISCRIMINATION–DISPARATE TREATMENT**
**PLAINTIFFS RICH, TACKETT, TUSEK JR., AND WOLFORD**

97.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

98.     Defendant is an "employer" with one (1) or more employees. MCL

37.2201(a).

99.    Plaintiffs Rich, Tackett, Tusek Jr., and Wolford hold sincere religious beliefs that conflict with the vaccine mandate.

100.    Plaintiffs Rich, Tackett, Tusek Jr., and Wolford supplied ample information regarding their religious beliefs.

101.    Plaintiffs' accommodation requests were denied.

102.    Plaintiffs were suspended without pay on December 21, 2021.

103.    Plaintiffs were formally terminated on January 21, 2022.

104.    Defendant failed to engage in the interactive process before suspending them on December 21, 2021 and terminating them on January 21, 2022.

105.    Multiple reasonable accommodations could have been offered to them without undue hardship.

106.    Plaintiffs could have worn masks in the workplace.

107.    Plaintiffs could have social distanced in the workplace.

108.    Plaintiffs could have participated in temperature screening.

109.    Plaintiffs could have tested periodically.

110.    Plaintiffs could have engaged in frequent sanitizing and disinfecting.

111.    Plaintiffs could have worked remotely.

112.    Plaintiffs could have been reassigned.

113.    Plaintiffs have suffered mental and emotional distress, outrage, mental

and physical anguish, loss of reputation, humiliation, embarrassment, indignity, and

the physical effects associated therewith as a direct and proximate result.

114.   Plaintiffs have been placed in financial distress and they have suffered

a loss of earnings and benefits, loss of health insurance and a loss of and impairment

of their earning capacity and ability to work as a direct and proximate result.

115.   Plaintiffs have been required to employ the services of an attorney.

116.   Defendant actions were intentional and reckless.

**COUNT V**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")**
**DISABILITY DISCRIMINATION–FAILURE TO ACCOMMODATE**
**PLAINTIFF HOBSON**

117.   Plaintiff restates the foregoing paragraphs as if set forth fully herein.

118.   Defendant is an "employer" as a corporation engaged in an industry

affecting commerce with fifteen (15) or more employees. 42 U.S.C. § 12111(5).

119.   Plaintiff Hobson was a "qualified individual." 42 U.S.C. § 12111(8).

120.   Plaintiff Hobson has a history of blood clots in his lungs.

121.   Plaintiff Hobson had a bad reaction to a medication in the past.

122.   Plaintiff Hobson provided ample medical records in support of his

request for medical accommodation to the vaccine mandate.

123.   Plaintiff requested accommodations for his specific disabilities.

124.   Defendant failed to engage in the interactive process before suspending

him on December 21, 2021 and terminating him on January 21, 2022.

125.   Multiple reasonable accommodations could have been offered to him without undue hardship.

126.   Plaintiff could have worn masks in the workplace.

127.   Plaintiff could have social distanced in the workplace.

128.   Plaintiff could have participated in temperature screening.

129.   Plaintiff could have tested periodically.

130.   Plaintiff could have engaged in frequent sanitizing and disinfecting.

131.   Plaintiff could have worked remotely.

132.   Plaintiff could have been reassigned.

133.   Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on April 1, 2022.

134.   Plaintiff has suffered mental and emotional distress, outrage, mental and physical anguish, loss of reputation, humiliation, embarrassment, indignity, and the physical effects associated therewith as a direct and proximate result.

135.   Plaintiff has been placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance and a loss of and impairment of their earning capacity and ability to work as a direct and proximate result.

136.   Plaintiff has been required to employ the services of an attorney.

137.   Defendant's actions were intentional and reckless.

## COUNT VI
## VIOLATION OF THE PERSONS WITH DISABILITIES CIVIL RIGHTS
## ACT OF 1976 ("PWDCRA")
## DISABILITY DISCRIMINATION–FAILURE TO ACCOMMODATE
## PLAINTIFF HOBSON

138.   Plaintiff restates the foregoing paragraphs as if set forth fully herein.

139.   Defendant is an "employer" with one (1) or more employees. MCL 37.1201(b).

140.   Plaintiff Hobson was a "qualified individual." 42 U.S.C. § 12111(8).

141.   Plaintiff Hobson has a history of blood clots in his lungs.

142.   Plaintiff Hobson had a bad reaction to a medication in the past.

143.   Plaintiff Hobson provided ample medical records in support of his request for medical accommodation to the vaccine mandate.

144.   Plaintiff requested accommodations for his specific disabilities.

145.   Defendant refused to engage in the interactive process.

146.   Plaintiff could have worn masks in the workplace.

147.   Plaintiff could have social distanced in the workplace.

148.   Plaintiff could have participated in temperature screening.

149.   Plaintiff could have tested periodically.

150.   Plaintiff could have engaged in frequent sanitizing and disinfecting.

151.   Plaintiff could have worked remotely.

152.   Plaintiff could have been reassigned.

153.    Defendant never explained why no accommodations could have worked.

154.    Defendant's actions were intentional and reckless.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.      Compensatory damages for monetary and non-monetary loss;

b.      Exemplary and punitive damages;

c.      Prejudgment interest;

d.      Reasonable attorney's fees; and

e.      Such other relief as in law or equity may pertain.


Respectfully Submitted,
HURWITZ LAW, PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiffs
340 Beakes Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
Dated: March 8, 2023                    noah@hurwitzlaw.com


18

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHAEL HOBSON, ADAM RICH,
AISHA TACKETT, DALE TUSEK JR.,          Case No.
BRIAN WOLFORD,

     Plaintiffs,                                     Hon.

v.

THE SPIRATEX COMPANY,

     Defendant.

_____

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiffs
340 Beakes Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

_____

## DEMAND FOR TRIAL BY JURY

Plaintiffs Michael Hobson, Adam Rich, Aisha Tackett, Dale Tusek Jr., and

Brian Wolford ("Plaintiffs"), by and through their attorneys, Hurwitz Law, PLLC,

hereby demand a trial by jury in the above-captioned matter for all issues so triable.

                                    Respectfully Submitted,
                                    HURWITZ LAW, PLLC

                                    /s/ Noah S. Hurwitz

Noah Hurwitz (P74063)
Attorney for Plaintiffs
340 Beakes Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489

Dated: March 8, 2023                          noah@hurwitzlaw.com